UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KACI RAE JACKSON,<br><br>               Petitioner,<br><br>v.<br><br>ANDREW SAUL,[1]<br>Commissioner of Social Security Administration,<br><br>               Respondent. | Case No. 3:18-cv-00108-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Kaci Rae Jackson's Petition for Review of the Respondent's denial of social security benefits, filed on March 5, 2018. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will remand the decision of the Commissioner.

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Respondent in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

# PROCEDURAL AND FACTUAL HISTORY

On December 27, 2013, Petitioner filed two separate applications for a period of disability and disability insurance benefits. One was filed under Title II and the second was filed under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, and §§ 1381 – 1383f.[2] These applications were denied initially and on reconsideration, and a hearing was conducted on August 24, 2016, before Administrative Law Judge (ALJ) Elizabeth Watson. After considering testimony from Petitioner and a vocational expert, ALJ Watson found that further development of the record was warranted, and she sent the Petitioner for consultative psychological and physical examinations. (AR 23.) These examinations were completed by Rebecca Alexander, Ph.D. and Debra McKinnon, D.O., on March 5, 2017, and March 24, 2017, respectively. (AR 982, 992.)

The ALJ conducted a supplemental hearing on May 4, 2017, at which Petitioner appeared and testified by telephone, and the ALJ considered testimony from a second vocational expert. The ALJ issued a decision on May 22, 2017, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on January 5, 2018.

---

[2] The Social Security Act provides disability benefits under two programs, known by their statutory headings as Title II and Title XVI. *See* § 401 *et seq.* (Title II); § 1381 *et seq.* (Title XVI). Title II "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need," *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988), provided the claimant establishes disability prior to his last insured date, *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998). Title XVI provides supplemental security income benefits "to financially needy individuals who are aged, blind, or disabled regardless of their insured status," *Bowen*, 485 U.S. at 75, and does not require a showing that the disability arose during the insured period, 20 C.F.R. § 416.202. The regulations that govern the two programs are equivalent. *See Sims v. Apfel*, 530 U.S. 103, 107, n. 2 (2000). Likewise, § 405(g) sets the terms of judicial review for each. *See* § 1383(c)(3). *Smith v. Berryhill*, 139 S. Ct. 1765, 1772, 204 L. Ed. 2d 62 (2019).

**MEMORANDUM DECISION AND ORDER - 2**

Petitioner timely appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the alleged disability onset date of March 1, 2009, Petitioner was twenty-nine years of age. Her date last insured for purposes of her Title II claim was December 31, 2013. Petitioner completed high school, and her past relevant work experience includes work as a nurse assistant, fast food worker and sales clerk.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of March 1, 2009. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's lumbar degenerative disc disease; right hand wound, status post amputation of the right thumb distal phalanx; chronic obstructive pulmonary disease (COPD); bipolar II disorder; generalized anxiety disorder; posttraumatic stress disorder (PTSD); obsessive-compulsive disorder (OCD); attention deficit hyperactivity disorder (ADHD); borderline personality disorder; and methamphetamine dependence severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ considered Listings 1.04 (Spine Disorders), 1.05 (Amputation),

3.02 (COPD), 12.04 (Affective Disorder), 12.06 (Anxiety and OCD), 12.08 (personality disorder), 12.11 (ADHD), and 12.15 (PTSD).[3] (AR 26.) The ALJ found that Petitioner's musculoskeletal and mental impairments did not meet or equal the criteria for any listed impairment. (AR 27.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and next determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined Petitioner retained the RFC to perform light work, with limitations. In determining Petitioner's RFC, the ALJ found that Petitioner's impairments could reasonably be expected to cause the symptoms she alleged, but that her statements about the intensity, persistence, and limiting effects of her conditions were not entirely consistent with the medical evidence and her daily activities. (AR 29.)

Based upon her evaluation of the record and the hypotheticals posed to the vocational experts, the ALJ found Petitioner was able to perform work as a photocopying machine operator, office helper, and postage machine operator, all of which constitute unskilled, light work jobs available in significant numbers in the national economy. Consequently, the ALJ determined Petitioner was not disabled.

---

[3] The agency revised the medical criteria for evaluating mental disorders effective January 17, 2017. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138 (Sept. 26, 2016). The ALJ correctly applied the new rules.

**MEMORANDUM DECISION AND ORDER - 4**

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

Petitioner argues the ALJ erred at step three of the sequential evaluation, because the ALJ did not evaluate the opinions of consultative examiners Rebecca Alexander, Ph.D., and Dr. Stephen Brennan, Psy.D., both of whom examined Petitioner and authored reports dated March 5, 2017, and March 11, 2014, respectively. (AR 760, 982.) Petitioner argues that, if the two opinions are credited at step three, they establish Petitioner met the "Paragraph B" criteria of the listings identified in section 12.00 of the listing of impairments, and Petitioner would have been found disabled at step three for the purpose of Petitioner's Title XVI claim.

Respondent argues the ALJ correctly evaluated the medical opinions, and that the ALJ's findings at step three constituted a reasonable interpretation of the evidence. Respondent argues also that Petitioner did not adequately raise the issue whether the ALJ

**MEMORANDUM DECISION AND ORDER - 6**

properly evaluated the opinions of examining psychologists Alexander and Brennan, and therefore waived this issue for judicial review.

   1. **Applicable Standards at Step Three**

To qualify as disabled at step three of the sequential evaluation, a claimant must meet or exceed the criteria for one of the listed impairments in Appendix 1 to Part 404 of the regulations. 20 C.F.R. § 404.1520(d). To meet a listing in Appendix 1 for a mental disorder, a claimant must satisfy criteria in paragraph A of the listings, which medically substantiate the presence of a mental disorder, and the criteria in paragraphs B or C, which describe the functional limitations associated with the disorder which are incompatible with the ability to work. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.

The ALJ found Petitioner's bipolar II disorder; generalized anxiety disorder; PTSD; OCD; ADHD; and borderline personality disorder severe, consistent with the diagnoses by various medical practitioners treating or examining Petitioner. (AR 26.) Petitioner therefore meets the paragraph A criteria of Listings 12.04, 12.06, 12.08, 12.11, and 12.15, which listings the ALJ considered. (AR 26.)[4]

To satisfy the paragraph B criteria, Petitioner's paragraph A impairments must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning listed in paragraph B. These four areas are:

   1.   Understand, remember, or apply information;
   2.   Interact with others;

---

[4] Respondent asserts Petitioner did not discuss the paragraph A criteria of the identified listings in her brief. Brief at 4. (Dkt. 17 at 4.) There was apparently no need to do so, however, given the ALJ's findings at step two, and her identification of the listings corresponding to Petitioner's mental diagnoses.

**MEMORANDUM DECISION AND ORDER - 7**

3. Concentrate, persist or maintain pace; and
4. Adapt or manage oneself.

Listing 12.00(E). A marked limitation means that a claimant's ability to function independently, appropriately, effectively, and on a sustained basis in a particular area is seriously limited. 20 C.F.R. § pt. 404, subpt. P, app. 1, 12.00F.2. An extreme limitation means that a claimant is not able to function in a particular area independently, appropriately, effectively, and on a sustained basis. *Id.*

### 2. The Consultative Examination Findings[5]

The record prior to the ALJ's first hearing on August 24, 2016, contained a psychological evaluation by Dr. Brennan. He completed an "Aid and Assist Evaluation" on March 11, 2014, in conjunction with criminal proceedings brought against Petitioner. (AR 760.) The purpose of his examination was to evaluate Petitioner and to offer a psychological opinion whether she was able to aid and assist in her own defense at that time. In addition to conducting a mental status examination and clinical interview of Petitioner, Dr. Brennan reviewed police reports and legal records dated November 8, 2013, through November 14, 2014, and medical records from December 26, 2013, through February 5, 2014. (AR 760.)[6] Dr. Brennan diagnosed Petitioner with major depressive disorder; borderline personality disorder; methamphetamine use disorder; cannabis use disorder; and alcohol use disorder. (AR 766.)

---

[5] Petitioner's treating physicians did not offer medical source statements as to Petitioner's mental residual functional capacity.
[6] Dr. Brennan did not identify the medical records with specificity, and it is not clear whether he reviewed all the records contained within the Administrative Record covering the same period.

**MEMORANDUM DECISION AND ORDER - 8**

Although Dr. Brennan did not complete a mental source statement of ability to do work related activities, he did comment on Petitioner's competency and mental functioning. In his opinion, Petitioner's competency was impaired by depression and borderline personality disorder, but "not enough to render her *unable* to aid and assist" in her defense. (AR 767.) He stated that:

> [b]ecause of her limited ability to soothe herself and to modulate stress, she has difficulty even on good days dealing with any feelings that are uncomfortable .... She cannot be given stronger medications because her liver and kidney functions are not back to normal yet[7].... I think Ms. Jackson has a life-long habit of unintentionally and unknowingly blowing things out of proportion. This is not the same as malingering but is instead an aspect of her personality functioning. She has a very low threshold for discomfort, believes she is incapable of dealing with it and panics such that she comes across as if she is exaggerating things. This is an aspect of her borderline personality disorder and is not malingering.

(AR 767.)

After the first hearing concluded on August 24, 2016, the ALJ ordered a consultative psychological examination. (AR 79.) She interviewed Petitioner on March 1, 2017, and reviewed Dr. Brennan's March 11, 2014, report; progress notes from Carolyn Moore, James James, D.O., and Christopher Simmons, LCSW, covering the period between September 29, 2014, and March 21, 2016; and chart notes from Vitus Nwaele, M.D., Tracey Morey Smythe, PA-C, Christopher Rodriguez, PA, and Richard Havard,

---

[7] Petitioner attempted suicide and was admitted to the emergency room on February 15, 2014. (AR 481.) She had ingested unknown quantities of Tylenol and Stratera to the point of liver and kidney toxicity, which in turn resulted in liver and renal failure. (AR 484-486.)

**MEMORANDUM DECISION AND ORDER - 9**

M.D.[8] Dr. Alexander submitted her report and findings on March 5, 2017. (AR 991.)

Dr. Alexander's diagnostic impression was borderline personality disorder; bipolar II disorder, depressed; posttraumatic stress disorder; obsessive compulsive disorder; stimulant use and alcohol use disorder, early sustained remission; and attention deficit hyperactivity disorder. She explained that Petitioner's borderline personality disorder "markedly" interfered with Petitioner's ability to interact appropriately in the workplace with employers, co-workers, and authority figures. (AR 988.)

Dr. Alexander also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental). (AR 989-991.) She determined Petitioner had marked limitations in her ability to carry out complex instructions and moderate limitations in her ability to carry out simple instructions; marked limitations in her ability to make judgments on complex, work-related decisions and moderate limitations in her ability to make judgments on simple work-related decisions and carry out simple instructions; and marked limitations in her ability to interact appropriately with the public and co-workers, and to respond appropriately to usual work situations. Dr. Alexander explained that Petitioner's borderline personality disorder, periods of severe mood instability, anger, hostility, and other traits would interfere with Petitioner's ability to interact appropriately in the workplace, and interfere with Petitioner's ability to concentrate, persist, or maintain pace. (AR 990.) Last, Dr. Alexander did not believe Petitioner could manage benefits in her own best interest. (AR 991.)

---

[8] These chart notes covered the period between June 16, 2015, and May 18, 2016. (AR 910-980.)

**MEMORANDUM DECISION AND ORDER - 10**

### 3. The ALJ's Step Three Finding

Without commenting on either physicians' opinion at step three,[9] the ALJ determined that Petitioner's impairments did not medically equal the criteria of the listed impairments considered in section 12.00. Instead, the ALJ references Dr. Alexander's medical opinion evidence at steps four and five, for the limited purpose of rejecting Petitioner's statements regarding the intensity, persistence and limiting effects of her symptoms in the context of the ALJ's residual functional capacity analysis. (AR 31-34.)[10]

The ALJ made the following findings corresponding to the four areas of mental functioning listed in paragraph B. First, she concluded Petitioner had moderate limitation in understanding, remembering or applying information, citing education records from 2013 where she earned "C's" and "D's," and generally concluding that medical records showed impaired memory only when Petitioner was using illicit substances. (AR 27.) The ALJ also relied upon Petitioner's ability to maintain hygiene, shop, prepare meals, and attend doctor appointments as evidence of her ability to understand, remember, and apply information. (AR 27.)

---

[9] The ALJ did not comment on Dr. Brennan's finding at steps four or five, either.
[10] The ALJ limited her discussion of Dr. Alexander's findings, commenting only upon her finding that Petitioner would have marked limitation in social function and failing to discuss her other findings in any great detail. (AR 34.) She gave Dr. Alexander's opinions "some weight" based upon the relatively broad rationale that Dr. Alexander's opinion was based upon a one-time evaluation. (AR 34.) The ALJ failed to mention, however, that Dr. Alexander reviewed Petitioner's medical history and cited to the specific medical records she considered.

**MEMORANDUM DECISION AND ORDER - 11**

Second, the ALJ determined that Petitioner had moderate limitation in interacting with others, because she could shop, live with others, maintain relationships with significant others, and attend church. (AR 27.)

Third, the ALJ found only moderate limitations with respect to Petitioner's ability to concentrate, persist or maintain pace. The ALJ's conclusion was based upon Petitioner's ability to manage her hygiene, prepare meals, perform chores, shop, care for pets, read, watch television, attend church, use a telephone, handle her own medical care, and lead AA groups. (AR 27.) The ALJ also cited Petitioner's work attempts after the alleged onset date. (AR 27.)[11]

Fourth, the ALJ determined Petitioner exhibited mild limitations in adapting or managing herself, because she could manage her self-care and personal hygiene, care for her pets, and at times she cared for her children. The ALJ concluded also that the record established Petitioner's mental health symptoms were effectively managed with medication compliance and sobriety.

In contrast to the ALJ's findings for the second, third, and fourth areas of mental functioning comprising the paragraph B criteria, above, Dr. Alexander found Petitioner exhibited marked impairment in interacting with others, maintaining concentration, persistence and pace, and adapting or managing oneself . (AR 990.) Dr. Alexander explained that Petitioner's borderline personality traits included a "pervasive pattern of instability of interpersonal relationships, impulsivity including substance and alcohol

---

[11] Yet, the ALJ found that Petitioner's work activity after March 1, 2009, did not rise to the level of substantial gainful activity. (AR 25.)

abuse, recurrent suicidal ideation, affective instability due to a marked reactivity of mood, inappropriate, intense anger and difficulty controlling anger, and poor empathy. (AR 987.) She stated that Petitioner's ability to concentrate, persist or maintain pace was affected by ADHD, OCD, and mood lability. (AR 988.)[12] And last, Dr. Alexander indicated that Petitioner's ability to interact appropriately in the workplace, respond to stress, and deal with frustration and respond to instructions from authority would be markedly impaired by her borderline personality features, mood lability, PTSD, and ADHD, citing Petitioner's difficulty in interacting in past employment situations. (AR 988.)

Dr. Brennan's earlier report also supports a finding of marked limitations in Petitioner's ability to adapt or manage oneself. He stated that Petitioner had a limited ability to soothe herself and modulate stress, and had a low threshold for discomfort. (AR 767.) For instance, the reason for the referral of Petitioner to Dr. Brennan was because Petitioner "broke down in court." (AR 761.) Petitioner was also "very tearful" through much of the interview, (AR 761), exhibited an angry affect, (AR 761), and described a past incident where she was arrested for public indecency (for having sex on the side of a road), (AR 761). One of the charges brought against Petitioner was resistance to arrest, such that she had to be pepper sprayed. (AR 760.)

The ALJ's decision provides no insight as to the relative weight she gave the opinions of Drs. Alexander and Brennan on the step-three issue. The Court agrees with Petitioner that, if credited, Dr. Alexander's and Dr. Brennan's consultative

---

[12] Dr. Alexander did not provide a specific limitation – whether marked or moderate – but her description supports a finding of marked limitation.

**MEMORANDUM DECISION AND ORDER - 13**

examination findings would establish marked limitation in three of the four paragraph B criteria enumerated in Listings 12.04, 12.06, 12.08, 12.11, and 12.15. Given this, the ALJ's failure to discuss the relevant medical opinions at step three constitutes error, as more fully explained below.

First, the Court finds the ALJ relied selectively upon evidence from a limited time period, and did not consider the record as a whole, when making the step three findings. Selective reliance on the evidence, reported out of the context of the record as a whole, is error. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). For instance, the ALJ's assessment of moderate limitation in interacting with others includes a cite to two pages contained within forty-nine pages of mental health treatment records from the Salem Clinic between August 2, 2011, to July 30, 2012; one page from the Linn County Department of Health Services treatment records dated December 17, 2013, to February 27, 2014 (fourteen pages); and two pages from later records of the Linn County Department of Public Health dated July 8, 2014, to September 16, 2014 (eighteen pages). (AR 27.) In contrast, both Drs. Alexander and Brennan, in addition to interviewing Petitioner, reviewed police reports and medical records spanning longer periods of time throughout 2013, 2014, 2015, and 2016.

Next, the ALJ indicated Petitioner's ability to live with others and maintain relationships with significant others demonstrated she could interact appropriately. But, the ALJ selectively left out that these same records indicate Petitioner's children were removed from her home on the grounds of child endangerment; she suffered physical and verbal abuse from her husband of ten years; she was arrested for assault because she

**MEMORANDUM DECISION AND ORDER - 14**

thought someone stole her CDs (AR 825); her social network was described as limited; and, since moving to Idaho to live with her father, she spent most of her time "in bed," according to her testimony (AR 57). Petitioner testified also that she often quit her various jobs after only a few months, because of anger issues. (AR 65-66.) The Court also notes that Petitioner's letter, written in defense of her claim on July 21, 2017, was peppered with profanity. (AR 365-367.)

The ALJ cited Petitioner's ability to shop and attend church as evidence she could interact appropriately with others, and maintain concentration and pace. However, the ALJ offered no quantitative data as to how much time Petitioner spent shopping or attending church. It is unclear how these two activities, which can be performed without talking to anyone, demonstrate Petitioner interacted well with others. At most, these two activities demonstrate Petitioner could venture out in public.

The ALJ concluded Petitioner's work history supported her ability to maintain concentration, persistence and pace. However, Petitioner's work history ended in March of 2010. (AR 291-292, 299.) Several positions lasted only a few months. (AR 314.) And diagnostic tests administered and reflected in the records identified by the ALJ in support of her conclusion indicated Petitioner's life during the time she did work orbited around drinking and that she neglected social and recreational activities. (AR 468.)

The ALJ stated Petitioner's ability to care for pets supported her conclusion that Petitioenr had the ability to concentrate and could adapt or manage herself. Petitioner stated she had cats that fed themselves, and their care required changing their litter box. (AR 366.)

**MEMORANDUM DECISION AND ORDER - 15**

The ALJ did not explain how maintaining hygiene, preparing simple meals, using a telephone, reading, watching television, and performing household chores equates to the ability to sustain the persistence, pace, and concentration required to maintain full time employment. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Petitioner reported the same or similar level of activities to Dr. Alexander, who did not find the activities significant. (AR 984.)

The most incongruous conclusion, however, by the ALJ is that Petitioner had only a mild limitation in her ability to adapt or manage herself. In contrast, the record as a whole reflects otherwise. Petitioner broke down during court proceedings, and a competency evaluation was ordered in 2014. Petitioner's children were removed from her home. The record contains evidence of two suicide attempts. Petitioner was evicted from her apartment in April of 2016. (AR 883.) She became hostile towards her therapist during one appointment, and hung up on another occasion during a follow up phone call. (AR 883, 890.) She was openly hostile toward Dr. Alexander. (AR 982.) The record reflects numerous missed counseling appointments. (AR 819, 875, 881, 904, 909.) Petitioner reportedly forgot she could set up "Ride Line" to attend scheduled counseling appointments. (AR 900.) Petitioner increased her medication on her own instead of consulting her physician. (AR 829, 864.) And, rather than see a doctor when her thumb became infected, Petitioner waited over one month, resulting in a severe infection and later amputation. (AR 918, 921, 923.)

There is no medical evidence of record contradicting the findings of Drs. Alexander and Brennan.[13] Nonetheless, the ALJ refused to credit these reports, and instead substituted her own diagnostic impression at step three. The Court finds this was impermissible error, especially considering the ALJ chose to obtain Dr. Alexander's opinion to assist her with evaluating the record as a whole, and Dr. Alexander offered opinions consistent with the requirements of the part B criteria of section 12.00.[14]

Given the ALJ's error in failing to adequately explain her step-three decision with reference to Dr. Alexander's and Dr. Brennan's opinions, this Court has discretion to remand for further proceedings. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Where the Commissioner "is in a better position that this court to evaluate the evidence, remand is appropriate." *Id*. (citing *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.1989)). In this case, the Commissioner is in a better position to reevaluate all of the medical evidence to more adequately address step three. For example, the Commissioner could determine that testimony from a medical examiner is necessary to decide whether Dr. Alexander's and Dr. Brennan's opinions are reflective of the record as a whole and support a finding that Petitioner met one of the listings of section 12.00. Because of the possible

---

[13] The state agency medical consultants did not have the benefit of the entire record. The first mental RFC was dated June 23, 2014, and the second was dated November 12, 2014. (AR 114 – 116, 144 – 147.) The state agency physicians also decided the part B criteria under the prior regulations. The ALJ determined the state agency psychological consultants' mental health assessments were deserving of only partial weight because later records demonstrated more limitations. (AR 35.)

[14] Respondent did not raise the harmless error standard, and therefore the Court need not consider it. Nonetheless, given the absence of any discussion of the consultative opinions at step three, the Court finds the error was not inconsequential to the ultimate nondisability determination. *Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1162 (9th Cir. 2008).

**MEMORANDUM DECISION AND ORDER - 17**

need for additional medical evidence and testimony, the ALJ is in a better position to evaluate the evidence, and this Court will remand for further proceedings.[15]

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 23, 2019

Honorable Candy W. Dale
United States Magistrate Judge

---

[15] Because the Court finds the ALJ erred at step three, the Court will not consider Petitioner's additional argument that the ALJ erred at step four when evaluating Dr. Alexander's and Dr. Brennan's opinions. However, the Court notes that several of the same reasons discussed by the Court above, and found to lack support in the record, were relied upon by the ALJ in her step four analysis discrediting Dr. Alexander's opinion. Dr. Brennan's opinion was not discussed at all in the ALJ's step four analysis.

**MEMORANDUM DECISION AND ORDER - 18**